# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Deshawn T. Sumlin (M29184), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 50395 |
| v. ) | |
| ) | Judge Philip R. Reinhard |
| John Varga, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff's motion to proceed *in forma pauperis* ("IFP") [3] is granted. The trust fund officer at his place of confinement is directed to deduct $7.80 from plaintiff's trust account as an initial partial payment of the filing fee, and to continue making deductions until the $350 filing fee is paid. The Clerk of Court shall send a copy of this order to the trust fund officer at Dixon Correctional Center. Plaintiff's claim of excessive force may proceed against the named defendants in their individual capacities. All other claims are dismissed. The Clerk of Court shall: file plaintiff's complaint [1]; issue summonses for its service on defendants; and send plaintiff four blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. The court grants plaintiff's motion for service of his complaint [5] and appoints the U.S. Marshal to serve the defendants. Service, however, will not be attempted until plaintiff returns completed service forms to the court. Plaintiff's failure to complete and return service forms within 35 days of this order may result in dismissal of an unserved defendant and this suit for failing to prosecute it. Plaintiff's motion for attorney representation [4] is denied.

## STATEMENT

Plaintiff DeShawn Sumlin, a prisoner at Dixon Correctional Center, brings this 42 U.S.C. § 1983 civil rights action against: Dixon Warden John Varga; an unidentified nurse at Dixon; and Dixon Correctional Officers Chad Jenkins, Rogerio Garza, Joseph Johnson, and several unidentified officers [1]. Plaintiff asserts officers used excessive force against him on April 19, 2017. According to plaintiff, he told Officer Johnson that he feared for his life based on a housing arrangement. Johnson responded that he would move plaintiff to a new cell, but would keep him on the same unit. (*Id.* at 7-8.) While moving, plaintiff was approached by Officers Jenkins and Garza, who ordered plaintiff to "cuff up." Once plaintiff was cuffed, the officers allegedly beat him about his body, but not his face. (*Id.* at 8.) Plaintiff was then taken to segregation, and was beaten again while in the van transporting him there and when he arrived at his segregation cell. (*Id.*)

Plaintiff states he suffered painful injuries to his back, arms, chest, and rib areas. He further states that he was urinating blood. (*Id.* at 9.) Plaintiff allegedly told a nurse the following day about his injuries, including blood in his urine, and requested medical attention. The nurse allegedly refused to send him to a doctor until plaintiff could prove he had blood in his

urine. Even after plaintiff showed an officer that there was blood in his urine, the nurse still refused to send plaintiff to a doctor, and instead told him that doctors were unavailable in segregation. (*Id.* at 9-10.) According to plaintiff, not until he was out of segregation, was he able to see a doctor, who confirmed that he was urinating blood. (*Id.* at 9-10.)

Plaintiff asserts he was falsely charged with and found guilty of a disciplinary violation following the beatings. (*Id.* at 10-11.) He further asserts that Warden Varga was aware Officers Jenkins and Garza often used excessive force and unjustifiably harassed inmates, but Varga refused to discipline the officers, thus allowing them to continue such conduct. (*Id.* at 12-13.) Currently before the court are his motion to proceed *in forma pauperis* (IFP) [3], his complaint for initial review [1], and his motion for attorney representation [4].

Plaintiff's IFP application demonstrates he cannot prepay the filing fee. His request to proceed IFP is thus granted. In accordance with 28 U.S.C. § 1915(b)(1) and (2), the court orders: (1) plaintiff to immediately pay (and the facility having custody of him to automatically remit) $7.80 to the Clerk of Court for payment of the initial partial filing fee and (2) plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The court directs the Clerk of Court to ensure that a copy of this order is mailed to each facility where plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify plaintiff's name and the case number assigned to this case.

As to plaintiff's complaint, 28 U.S.C. § 1915A requires the court to screen a prisoner's complaint and to dismiss it if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoner complaints in the same manner they review ordinary motions to dismiss under FED. R. CIV. P. 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). Under federal notice pleading requirements, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* FED. R. CIV. P. 8(a)(2). When reviewing the sufficiency of a complaint on initial review, courts "accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), "draw all reasonable inferences from those facts in favor of the plaintiff," *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015), and construe complaints filed by *pro se* litigants liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff's allegations state colorable claims of excessive force. An Eighth Amendment claim exists "[w]hen prison officials maliciously and sadistically use force to cause harm," as opposed to "a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Additionally, although supervisory officials, such as wardens, cannot be held strictly liable for the constitutional torts of subordinate officers, supervisors may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of

what [he] might see." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citation omitted). Plaintiff's allegations sufficiently describe excessive force by the correctional officers, as well as personal involvement by the warden. The complaint may thus proceed against these defendants in their individual capacities.

To the extent plaintiff seeks to sue Varga in his official capacity, the claim is dismissed. Claims seeking monetary relief against state officials in their official capacities are barred by the Eleventh Amendment. *Hardy v. Wexford*, No. 12 C 6554, 2015 WL 1593597, at *15 (N.D. Ill. Apr. 2, 2015) (citing *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

As to plaintiff's allegations that the officers filed a false disciplinary report, he does not address the procedures of his disciplinary proceedings. "[A] prison inmate does not have a constitutional right to be free from false or baseless disciplinary charges." *McSwain v. Hendren*, No. 2017-CV-00158-LJM-MJD, 2017 WL 1382789, at *2 (S.D. Ind. Apr. 18, 2017) (citing *Lagerstrom v. Kingston*, 463 F.3d 621, 624-25 (7th Cir. 2006)). The constitutional rights associated with prison disciplinary actions concern the procedures by which an inmate is disciplined and not the validity of the disciplinary charge itself. Where a disciplinary sentence results in the deprivation of an inmate's constitutional liberty interest (an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995)), "due process requires that he receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record." *Lagerstrom*, 463 F.3d at 624 (citations omitted); *see also Gibson v. Pollard*, 610 Fed. Appx. 571, 574 (7th Cir. 2015) ("The prison did all that it was required to do" when it notified the inmate of the charge, made sure he was at the disciplinary hearing, and allowed him to rebut the recommendation that he be placed in segregation).

Although a substantive due process right may exist "if a prison official's conduct [is] so extreme that 'no subsequent procedural fairness could obscure or heal,'" *Lagerstrom*, 463 F.3d at 625 (quoting *Leslie v. Doyle*, 125 F.3d 1132, 1136 (7th Cir. 1997)), plaintiff does not allege such extreme conduct. Instead, he asserts what most prisoners contend when challenging a prison disciplinary decision—an officer lied when issuing the report. Plaintiff's allegations about his disciplinary charge and penalty do not raise his right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. This claim is dismissed.

As to the segregation unit nurse who allegedly refused plaintiff's requests for medical care after he told her he had blood in his urine, such allegations could state a claim. "A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *see also Hoban v. Godinez*, 502 Fed. Appx. 574, 578 (7th Cir. 2012) ("abdominal pain, blood in the urine, and dehydration are serious enough to require" medical attention). But this claim cannot proceed until plaintiff knows the nurse's identity and includes her in an amended complaint. Also, the claim, though arising shortly after the alleged excessive force, is arguably unrelated and belongs in a separate suit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").

For the above stated reasons, plaintiff may proceed with his claims of excessive force against Dixon Officers Johnson, Jenkins, and Garza and Dixon Warden Varga in their individual capacities. All of plaintiff's other claims are dismissed.

Plaintiff's motion to serve his complaint is granted. The court directs the Clerk of Court to issue summonses for service of the complaint on Varga, Jenkins, Garza, and Johnson. The Clerk of Court shall send to plaintiff four blank USM-285 service forms. Plaintiff is advised that a completed USM-285 form is required to serve each defendant. The U.S. Marshal is appointed to serve defendants, but the Marshal will not attempt service unless and until the required forms are received. Plaintiff must therefore complete and return service forms within 35 days of this order. His failure to comply may result in the dismissal of an unserved defendant and this case for failing to prosecute it.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. Letters or other documents that are sent directly to a judge or otherwise fail to comply with these instructions may be disregarded by the court or returned to plaintiff. Also, he must notify the court in writing if his address changes, and his failure to do so may result in dismissal of this case.

Lastly, plaintiff's motion for attorney representation is denied. "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The court, however, may request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In determining whether to recruit counsel, the court engages in a two-step analysis: (1) has the plaintiff made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does this particular plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). This analysis focuses not only on the plaintiff's ability to try the case, but also his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Even though plaintiff states he contacted several attorneys but was unable to obtain representation, an attorney is unnecessary at this time. This case is in its very early stages. No defendant has been served, and no discovery is being conducted. *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (noting that it is difficult to make an accurate determination regarding a plaintiff's ability or the complexity of a case when case is still in "its infancy"). Plaintiff's pleadings thus far are articulate and thorough, and they demonstrate his ability to represent himself at this time. If this case progresses to a point where attorney representation is warranted, plaintiff may again request counsel and the court will again consider whether to recruit one.

Date: 1/25/2018          ENTER:

*Philip G. Reinhard*
United States District Court Judge

Docketing to Mail Notices. (LC)